ATTORNEY GENERAL *vs.* EASTERN RAILROAD COMPANY.

Suffolk.   Jan. 25. — March 4, 1884.   DEVENS & C. ALLEN, JJ., absent.

A railroad corporation, which had maintained a passenger station in a town for five consecutive years, after obtaining the approval of the railroad commissioners and of the selectmen, established a new station in the same town and neighborhood, and, after giving public notice of its intention, discontinued the stopping its trains at the old station, and used the new station. *Held*, that there was a relocation, and not an abandonment, of the station, within the Pub. Sts. *c*. 112, §§ 156, 157.

If the board of railroad commissioners and the selectmen of a town have properly signified their "approval" of the relocation of a passenger station of a railroad corporation, as required by the Pub. Sts. *c*. 112, § 157, this court will not revise their decision.

The records of the board of railroad commissioners contained a vote that the board approved the relocation of a passenger station of a railroad corporation, "as proposed by the selectmen" of the town. The records of the selectmen contained a vote, written by the town clerk, who was not a member of the board or sworn as its clerk, but who acted as such, that the station "be relocated" at the place named, "in concurrence with the vote of the railroad commissioners." *Held*, that there was an "approval in writing" by the railroad commissioners and by the selectmen, within the Pub. Sts. *c*. 112, § 157.

INFORMATION, under the Pub. Sts. *c*. 112, § 156, at the relation of ten legal voters of the town of Everett, to restrain the respondent corporation from continuing an abandonment of its station at Waters Street in West Everett. The answer denied an abandonment, and set up a relocation of the station in pursuance of the Pub. Sts. *c*. 112, § 157. Hearing before *W. Allen*, J., who reported the case for the consideration of the full court, in substance as follows:

It was admitted by the respondent that the station in question was established in 1855, and had been continuously maintained until December 18, 1882. On December 16, 1882, the respondent gave public notice that, on December 18, it would discontinue stopping its trains at said station; and, in pursuance of said notice, it did so discontinue to stop its trains.

The relators offered to show, as bearing upon the question whether or not the respondent had in law abandoned said station, that the change of location of the station discommoded more than three quarters of the patrons of said railroad who ordinarily took and left the cars at the station, and compelled them to travel upon each trip fifteen hundred feet farther, to the

new station at Prescott Street; that since the establishment of the station at Waters Street, in 1855, a settlement of considerable proportions had grown up about it, attracted to that point by the railroad facilities afforded by the stoppage of trains at said station; that a large number of people had purchased land, and built houses, shops, and manufactories, near said station, for the same reason; that, relying upon the continuance of said station, they had paid a much higher price for the land than they otherwise would; that the value of real estate in the vicinity of said station had already been greatly decreased, and would be still further decreased by said abandonment; that the location of the new station was substantially in open land; and that there were very few inhabitants and no business in its immediate vicinity; all of which evidence the judge excluded.

The respondent offered in evidence, which was admitted, against the objection of the relators, the record of the railroad commissioners approving the relocation of said station, which, after reciting a request of the selectmen of Everett to the board of railroad commissioners for a meeting in Everett for the purpose of relocating a station and the appointment of a day for the meeting, was as follows: "Tuesday, October 11, at half-past ten A. M., was appointed for such meeting, at the station of the Eastern Railroad in Everett; and on Tuesday, October 11, pursuant to assignment, the board (all the members being present) met the selectmen of Everett at the Everett station on the Saugus branch of the Eastern Railroad, for the purpose of considering the matter of the relocation of the station. The selectmen appeared for the town, and submitted a vote of the inhabitants in favor of relocating the station at the foot of Prescott Street. A number of remonstrants against that location were also present, and the question was discussed by the parties interested. The proposed location was viewed, and the hearing was closed. Subsequently it was voted, that the board approves the relocation of the West Everett passenger station on the Saugus branch of the Eastern Railroad at the foot of Prescott Street, as proposed by the selectmen of Everett. Attest: Wm. A. Crafts, clerk."

Joseph H. Cannell testified that he was the town clerk of Everett in the year 1882, and that he acted as clerk of the board

of selectmen, but that he was not a member of that board, and had not been sworn as clerk of said board. He produced the records of the selectmen, and read their action in relation to said relocation, which was had in his presence, as follows: " Voted, that the West Everett depot on the Saugus branch of the Eastern Railroad be relocated at the foot of Prescott Street, in concurrence with the vote of the railroad commissioners."

No action on the part of the railroad corporation, except as herein appears, and no approval in writing by either the board of railroad commissioners or the selectmen of Everett, was given in evidence, unless said records constitute such approval in writing. After said proceedings by the board of railroad commissioners and the selectmen of Everett, the respondent acquired the land necessary for a station and its approaches, at the foot of Prescott Street, and erected a station thereon, which was completed and ready for use on December 18, 1882; and since that time the respondent's trains have stopped there, and not, as before, at Waters Street.

The relators contend that the acts of the respondent constituted in law an abandonment of said station, and that the respondent had not shown a relocation of said station in accordance with the provisions of law.

*C. R. Train*, for the Attorney General.

*R. Olney*, for the respondent.

MORTON, C. J.   This is an information brought under the Pub. Sts. *c.* 112, § 156, which provides that " a railroad corporation which has established and maintained throughout the year for five consecutive years a passenger station at a point upon its road shall not abandon such station; " 'and " in case of a violation of the provisions of this section, the Attorney General, at the relation of ten legal voters of the city or town in which said station is located, shall proceed in equity by information to enjoin the corporation from further violation thereof."   The next following section provides that " a railroad corporation may relocate passenger stations and freight depots, with the approval in writing of the board and of the city council of the city or the selectmen of the town in which such stations or depots are situated."   By " the board " is meant the board of railroad

commissioners, as appears by the Pub. Sts. *c.* 112, § 1. See also St. 1874, *c.* 372, § 117, of which this section is a reënactment.

The policy of the law is to prohibit railroad corporations from abandoning stations and discontinuing the accommodations provided for the people, when the station has existed for five years, without the sanction of the Legislature, but to permit them to make minor changes in the location of stations, upon obtaining the sanction of the board of railroad commissioners and of the city council or selectmen. No general rule of law, applicable to all cases, can be laid down, as to what change of a station will constitute an abandonment or a relocation. Every relocation involves in one sense an abandonment of the old station, and must, almost of necessity, be attended with inconvenience to some persons. It was the intention of the Legislature to leave to the decision of the railroad commissioners and of the city council or selectmen, the question whether a relocation of a station proposed by a railroad corporation should be permitted. We need not decide whether a case might not arise in which this court could revise the proceedings of these boards, and hold that a change made by their permission as a relocation was in fact an abandonment of the station. The statute at least gives to them a large discretion to determine whether a proposed change is a relocation or an abandonment; and, upon the facts of the case before us, they were clearly justified in treating the change of the station as a relocation within the statute.

The purpose and effect of the change was not to discontinue a stopping-place in the town of Everett, but merely to change the location of the station buildings to a place near by, in the same town and neighborhood, with the design of better accommodating the same community. Whether such a relocation was desirable, was a matter left to the judgment of the railroad commissioners and of the selectmen. The evidence offered by the relators, as to the inconvenience of the change to them and others, was proper for the consideration of these boards, but was not admissible to control their decision. If these boards have properly signified their approval of the relocation, we cannot revise their decision.

The relators contend that the relocation in this case was invalid, because the board of railroad commissioners and the

selectmen have not given their "approval in writing," within the provisions of the statute. The purpose of the statute was to prevent the mischiefs which might arise if the question of the legality of a relocation was made to depend upon uncertain oral testimony to show the sanction of these two boards. It requires, therefore, that their approval shall be in writing, but it does not prescribe that it shall be by a writing signed by them. The board of railroad commissioners is a board of public officers required to keep records and having a sworn clerk. The most appropriate way of expressing their approval of a relocation is by a vote passed and entered upon their records. A board of selectmen is not required by express provisions of statute to keep records, and its clerk, if it appoints one, is not a certifying officer. *Commonwealth* v. *McGarry*, 135 Mass. 553. But it is a board which may act by vote, and a majority may bind the whole. It is usual and proper for selectmen to keep records or minutes of their votes and proceedings.

In the case at bar, the selectmen of Everett passed a vote in substance approving the relocation as approved by the board of railroad commissioners. They caused it to be recorded upon their book of records. Though entered by the clerk, it was their act, and the record of the vote was their approval in writing within the fair meaning of the statute.

The relators object to the vote of the board of railroad commissioners, because it states that the relocation was "proposed by the selectmen of Everett." But it is immaterial who proposes the relocation, and such recital cannot affect the substance of the approval. They also object to the vote of the selectmen, because, instead of approving the relocation by the railroad, it relocates the station. This is merely an error of form. In substance, the vote is an approval of a relocation to be made by the railroad.

Upon the whole case, we are of opinion that no abandonment of the old station is shown. The railroad corporation has relocated the station, having first obtained the approval in writing of the two boards, as required by the statute; and its proceedings were legal and valid.    *Information dismissed.*