CAPITAL SAVINGS BANK & TRUST CO. v. INHABITANTS OF TOWN OF FRAMINGHAM.

(Circuit Court of Appeals, First Circuit. November 5, 1917.)

No. 1301.

1. MUNICIPAL CORPORATIONS ⊚⊸908—NOTES—VALIDITY.
    The inhabitants of a Massachusetts town voted that the treasurer should be authorized to borrow in anticipation of taxes such sums of money as might be needed, giving the note or notes of the town therefor, signed by the treasurer and countersigned by at least a majority of the selectmen. Rev. Laws Mass. c. 27, § 6, declares that cities and towns may by a majority vote incur debts for temporary loans in anticipation of taxes for the municipal year for which such debts are incurred and expressly made payable therefrom by vote, and such loans shall be payable within one year after date incurred. Section 9 declares that a city or town, which has incurred a debt within the limitations as to

⊚⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

amount and time of payment prescribed, may issue notes signed by its treasurer, and if issued by a city countersigned by its mayor, or if issued by a town countersigned by a majority of its selectmen. St. Mass. 1904, c. 153, § 1, declares that notes of a city issued under the provisions of Rev. Laws, c. 27, § 6, or section 10, may or may not bear interest, and, if they do not bear interest they may be sold at such discount as the maker or its treasurer deems proper. The by-laws of the town declared that whenever it should be necessary to execute any deed conveying land, or any other instrument required to carry into effect the vote of the town, the same should be executed by the treasurer. *Held*, that notes incurred for temporary loans under Rev. Laws Mass. c. 27, § 6, must, in view of section 9, be signed by the treasurer and countersigned by the mayor, or a majority of the selectmen, according as they are city or town notes, and hence notes authorized by the vote of the town were invalid, both under the statutes and the vote, where not countersigned by a majority of the selectmen.

2. MUNICIPAL CORPORATIONS &#8940;908—NOTES—VALIDITY—ESTOPPEL.

In such case, as the notes were not the notes of the town, because not countersigned by a majority of the selectmen, though forged signatures of the selectmen were appended, the town was not estopped, as against a bona fide holder, to deny a recital on the face of the notes that they had been duly executed, which recitals preceded the signature of its treasurer, for the countersignatures of the selectmen being essential to the due execution of the notes, it was their right and duty to ascertain the necessary precedent facts and in conjunction with the treasurer, if a certification was to be made on the notes, to certify to those facts.

3. MUNICIPAL CORPORATIONS &#8940;908—NOTES—ESTOPPEL.

A recital on the face of a note, made by the officers of a municipality charged with the duty of ascertaining the existence of necessary facts precedent to its valid issuance, will estop the municipality from showing the nonexistence of such facts against a bona fide holder.

4. MUNICIPAL CORPORATIONS &#8940;920—NOTES—INDORSEMENT—AUTHORITY OF OFFICIALS.

Negotiable Instruments Act (Rev. Laws Mass. c. 73) § 59, declaring that, where an instrument is drawn or indorsed to a person as cashier or other fiscal officer of a bank or corporation, it is deemed prima facie to be payable to the bank or corporation, and may be negotiated either by the indorsement of the bank or corporation or indorsement of the officer, has no application to municipal corporations, and does not authorize the treasurer of a town to indorse a note.

5. MUNICIPAL CORPORATIONS &#8940;920—OFFICIALS—AUTHORITY OF TREASURER.

A Massachusetts town treasurer has no general authority to bind the town by his indorsement of a note, having no power by virtue of his office to make the town responsible on commercial paper.

6. MUNICIPAL CORPORATIONS &#8940;920—NOTES—TREASURER—IMPLIED AUTHORITY.

Though it was customary for Massachusetts towns to make notes payable to the treasurer, and notes so made could not be put in circulation without the indorsement of the treasurer, that practice did not authorize a treasurer to indorse a note payable to his order, so as to bind the town, the names of a majority of the selectmen who were required to countersign to give the note validity, having been forged, for such practice could not give the treasurer authority in excess of that conferred by statute, and the indorsement would leave the notes merely as if they had been made payable to the municipality and indorsed in blank.

In Error to the District Court of the United States for the District of Massachusetts; Jas. M. Morton, Jr., Judge.

---

&#8940;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the Capital Savings Bank & Trust Company against the Inhabitants of the Town of Framingham. There was a judgment for defendant, and plaintiff brings error. Affirmed.

Charles F. Choate, Jr., of Boston, Mass. (Ralph A. Stewart, Edmund S. Kochersperger, of Boston, Mass., and Choate, Hall & Stewart, all of Boston, Mass., on the brief), for plaintiff in error.

Alfred Hemenway, of Boston, Mass. (Frederic H. Hilton, of Framingham, Mass., Thomas W. Proctor, of Boston, Mass., Walter Adams, of So. Framingham, Mass., and Edwin H. Abbot, Jr., of Boston, Mass., on the brief), for defendant in error.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a writ of error from a judgment of the United States District Court for Massachusetts in favor of the town of Framingham, a Massachusetts municipal corporation, in an action at law brought by the Capital Savings Bank & Trust Company, a Vermont corporation, seeking to charge the town as maker and indorser upon two promissory notes, one for $20,000, dated May 20, 1909, and payable to the order of its treasurer in one year from date, and the other for $25,000, dated June 10, 1909, also payable to the order of its treasurer in one year from date. Both notes bear the indorsement, "John B. Lombard, Treasurer, Town of Framingham." The form of the notes is the same; they differ simply in the amounts, dates and time of maturity, and the statement as to the total sum borrowed pursuant to a vote of the town, which in the note of May 20 is stated to be $80,000, and in that of June 10 to be $105,000. The note of May 20 reads as follows:

[First Page.]

[Printed Seal of the Town of Framingham.]

Town Treasurer's Office.

$20,000.00.                                    Framingham, May 20, 1909.

The town of Framingham, in the county of Middlesex and state of Massachusetts, for value received, promises to pay to the order of its treasurer twenty thousand dollars, on the twentieth day of May, 1910, at Boston, Mass.

This note is issued by the town for its lawful uses, and was duly authorized by a vote of the town duly passed by the voters present and voting at a town meeting for the purpose, duly warned and held. It is hereby certified that every requirement of law has been duly complied with in the issue hereof, and that the debt created hereby is within every limit prescribed by law and by the votes of the town.

In witness whereof, the said town of Framingham has caused this note to be signed in its behalf by its treasurer, and countersigned by a majority of its selectmen, this twentieth day of May, 1909.

                                    The Town of Framingham,
                                    By John B. Lombard, Treasurer.

Exempt from taxation in Massachusetts.

We hereby countersign this note, and we also certify that this note is issued under authority of the above-described vote, and that it conforms to the requirements thereof, and that the total sum borrowed to date, under the said vote, including this note, is $80,000.00.      William J. Walsh,
                                                Roger H. O'Brien,

          A Majority of the Selectmen of the Town of Framingham.
     [Impression of the Seal of the Town of Framingham]

[Second Page.]

Pay to the order of the Capital Savings Bank and Trust Company of Montpelier, Vt.                                    John B. Lombard, Treasurer,
                                                         Town of Framingham.
Pay to the order of any bank or banker for collection, to the credit of
                        The Capital Savings Bank & Trust Co.,
                                                      Montpelier, Vt.

[Third Page.]

At a legal meeting of the inhabitants of the town of Framingham, duly warned as required by law, and held March 10, 1909, under the following article in the warrant for calling the same, to wit:

Article 8. To see if the town will vote to authorize the town treasurer to borrow money temporarily in anticipation of the taxes for the year 1909, and to give the note or notes of the town therefor, fix the limit to which the treasurer may borrow as aforesaid, pass any vote or take any action relative thereto, or to the subject-matter of this article.

Voted, that the town treasurer be authorized to borrow, in anticipation of taxes for the year 1909, such sums of money as may be needed, from time to time, for the current expenses of the town, not exceeding altogether one hundred twenty thousand dollars, paying therefor the current market rate of interest, giving the note or notes of the town therefor, signed by the treasurer and countersigned by at least a majority of the selectmen, to be paid from the taxes to be raised in the year 1909, and said sums so borrowed are hereby expressly made payable therefrom. And I further certify that John B. Lombard is treasurer of the town of Framingham, duly elected and qualified.
                                        Frank E. Hemenway, Town Clerk.

John B. Lombard was treasurer of the town, and signed his name as treasurer at the end of the testimonium clause, as it appears on the above note. William J. Walsh and Roger H. O'Brien were a majority of the selectmen of the town, but their signatures upon the note were forged. The name of "John B. Lombard, Treasurer," appearing on the second page of the note, is his signature. The words "Pay to the order of the Capital Savings Bank & Trust Company of Montpelier, Vt.," were written by the president of the bank after it received the note, and before it was sent to Boston for collection. Frank E. Hemenway was the town clerk, and the name appearing on the third page of the note, at the end of the vote and certificate, is his signature. What has been stated as to the note of May 20 applies in every material respect to the note of June 10, except as above stated.

The defense made as to both notes was that the countersignatures of William J. Walsh and Roger H. O'Brien were forged, and the jury so found. The plaintiff was a purchaser for value without notice of any defect in the signatures, having purchased the notes from the American Banking Company, of Boston, before maturity. The town never received any consideration for the notes.

The questions raised by the assignments of error and relied upon by the plaintiff (plaintiff in error) are: (1) Were the signatures of Walsh and O'Brien necessary to the due execution of the notes? (2) If their signatures were necessary, is the town estopped by the recitals appearing on the notes to show that the countersignatures of Walsh and O'Brien were forged, and that the notes were not duly executed? And (3) is the town bound as an indorser and warrantor of the genuineness of the signatures preceding the indorsement?

[1] The plaintiff's contention as to the first question is that the coun-

tersignatures of the selectmen were not necessary to the due execution of the notes. In support of this contention it calls attention to the provisions of chapter 27 of the Revised Laws of Massachusetts, and particularly to section 6 of that chapter; to section 1 of chapter 153, Laws of Mass. 1904, and to article 9 of the by-laws of the town which was in force at the time the notes were given.

Section 6, chapter 27, R. L. Mass., provides:

"Cities and towns may by a majority vote incur debts for temporary loans in anticipation of taxes for the municipal year for which such debts are incurred and expressly made payable therefrom by such vote. Such loans shall be payable within one year after the date of their incurrence, and shall not be reckoned in determining the authorized limit of indebtedness."

The material portion of section 1, chapter 153, of the Laws of Mass. 1904, provides:

"Notes of a city or town issued under the provisions of section 6 or of section 10 of chapter 27 of the Revised Laws, may or may not bear interest. If they do not bear interest they may be sold at such discount as the maker or its treasurer or other officer authorized to sell the same deems proper."

Article 9 of the by-laws of the town reads as follows:

"Whenever it shall be necessary to execute any deed conveying land, or any other instrument required to carry into effect any vote of the town, the same shall be executed by the treasurer in behalf of the town, unless the town shall vote otherwise."

The defendant's contention is: That the notes were not duly executed. That section 6 of said chapter simply authorizes cities and towns by majority vote to incur debts for temporary loans in anticipation of the taxes for the year in which the loans are made, and fixes the time within which such loans must be paid, and does not authorize, either expressly or by implication, the issuance of notes therefor. That authority for issuing notes for debts so contracted is expressly provided for in section 9 of said chapter, which provides:

"A city or town which has incurred a debt within the limitations as to amount and time of payment prescribed by this chapter may issue * * * notes * * * therefor, properly denominated on the face thereof, signed by its treasurer and, if issued by a city, countersigned by its mayor, or if issued by a town, countersigned by a majority of its selectmen, with interest payable semiannually at such rate as it deems proper, and may sell said * * * notes, * * * at not less than par, at public or private sale, or may use the same in payment of such debts."

And that section 1, chapter 153, above quoted, relates simply to notes of a city or town issued for debts incurred for temporary loans under the provisions of section 6 or section 10 of chapter 27 and the rate of interest to be paid therefor, and is not an authorization for the issuance of notes by a city or town. In support of its position it calls attention to Brown v. Newburyport, 209 Mass. 259, 95 N. E. 504, Ann. Cas. 1912B, 495, and Franklin Savings Bank v. Framingham, 212 Mass. 92, 98 N. E. 925. In both of these cases the loans for which the notes were given were temporary loans made in anticipation of taxes under section 6, and in both it was held that such notes must be signed by the

treasurer and countersigned by the mayor or a majority of the select-men, as required by section 9.

In regard to article 9 of the by-laws above quoted, the defendant says (1) that the words "or any other instrument," as used therein, do not relate to notes, but to instruments of the character of those previously mentioned in the article; (2) that, if they do relate to notes and their execution, the article is invalid as being in conflict with section 9 of chapter 27 of the R. L. Mass.; and (3) that if they do include notes, and the article is a valid by-law, the vote of the town under which the notes in question purport to have been executed expressly requires that they be signed by the treasurer and countersigned by at least a majority of the selectmen, which is the same requirement as that contained in section 9 of the statute.

The plaintiff's reply to this is that a debt incurred by a city or town under section 6 is not such a debt as is referred to by the language used in section 9 as being incurred "within the limitations as to amount and time of payment prescribed by this chapter"; that the Court of Appeals for this circuit, in passing upon this question in the case of Citizens' Savings Bank v. City of Newburyport, 169 Fed. 766, 768, 95 C. C. A. 232, held that section 9 related only to notes issued for the permanent indebtedness of a municipality and not to notes for temporary loans made under section 6. That case was decided in 1909, prior to the decisions of the Supreme Court of Massachusetts in the cases above referred to. The ruling by the Court of Appeals was not material to a determination of the question whether the note there under consideration was duly executed or not, for it was signed by the city treasurer and the mayor, in compliance with section 9, and consequently there could be no question as to its due execution. The order or vote of the city council of Newburyport, authorizing a debt to be incurred by a loan in anticipation of taxes and then before the court, did not expressly require that the note to be given therefor should be signed by the mayor as well as the city treasurer, and the Court of Appeals evidently regarded the order or vote as complying with the provisions of chapter 27, as construed by it; but the Supreme Court of Massachusetts, in Brown v. Newburyport, supra, in considering this same order or vote, said:

"The order itself was not strictly in compliance with the statute, in that it did not require the countersigning of the note by the mayor. This, however, was necessarily implied."

And it had to be implied in order to render the order or vote valid from the viewpoint of the Massachusetts court, because, under its holdings, the city had no authority to execute notes except they were signed by the treasurer and countersigned by the mayor, as required by section 9.

After giving due consideration to the arguments of counsel, the conflict, actual or apparent, between the above decision of this court and the Massachusetts decisions, and the necessity for a uniform ruling upon the question, we are of the opinion that the fair and reasonable meaning of the language of section 9, when read in connection with the other provisions of chapter 27, is that notes given for debts incurred for temporary loans under section 6 must be signed by the treasurer and

countersigned by the mayor or a majority of the selectmen, according as they are city or town notes. Loans made under the provisions of section 6 are expressly limited as to time of payment, and, being made in anticipation of the taxes of the municipal year in which the debt is incurred and payable therefrom, are impliedly, if not expressly, limited to an amount not exceeding the taxes for that year. Consequently, such loans fall within the language of section 9, and, this being so, notes issued therefor by the municipality must be executed as there required. The notes in question, therefore, were not duly executed, either under the statute or the vote of the town.

[2, 3] The countersignatures of a majority of the selectmen being requisite to the due execution of the notes, the next question is whether the town is estopped to deny the recitals on the face of the notes preceding the signature of Lombard, the treasurer, and, if so, whether the language of the recitals is such as to fairly and reasonably give the plaintiff, who was a bona fide purchaser, to understand that the countersignatures of Walsh and O'Brien were genuine; for, if the treasurer alone was authorized to certify to the recitals, and the language employed in them fairly gave the plaintiff to understand that the signatures of the selectmen were genuine, the town would be estopped to show that they were not. Presidio County v. Noel-Bond Company, 212 U. S. 58, 29 Sup. Ct. 237, 53 L. Ed. 402.

It has been many times held by the Supreme Court of the United States that a recital on the face of a note, made by the officers of a municipality charged with the duty of ascertaining the existence of necessary facts precedent to its valid issuance, will estop the municipality from showing the nonexistence of those facts as against a bona fide holder of the note. Coloma v. Evans, 92 U. S. 484, 23 L. Ed. 579; Coler v. Cleburne, 131 U. S. 162, 9 Sup. Ct. 720, 33 L. Ed. 146; Anthony v. County of Jasper, 101 U. S. 693, 25 L. Ed. 1005; Gunnison County v. Rollins, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689; Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760. And the question is whether the treasurer alone, under the statutes of Massachusetts and the vote of the town, was charged with the duty of ascertaining the necessary facts precedent to the execution and issuance of the notes, or whether, in view of the statutes and vote of the town, the certification of a majority of the selectmen also as to such facts was essential to work an estoppel against the town. As we have above pointed out, the notes were not the notes of the town, for the reason that they were not countersigned by a majority of the selectmen as required by the vote of the town and the statutes of the state. The countersignatures of the selectmen being essential to the due execution of the notes, it was the right and duty of these officers to ascertain the necessary precedent facts, and, in conjunction with the treasurer, if a certification was to be made on the notes, to certify to those facts. This duty involved the exercise of discretion and judgment on the part of the selectmen as well as the treasurer, and the selectmen never having been permitted to exercise the right of determining the existence or nonexistence of the facts, and never having certified to them, the town cannot be held to have made a recital as to the valid execution

of the notes, which would be binding upon it. This was the conclusion reached by the Massachusetts court in considering a like question in Brown v. Newburyport and Franklin Savings Bank v. Framingham, supra, in both of which cases the provisions of the statute were the same as those here under consideration, while in one case the vote was the same, and in the other it was construed to mean the same.

The plaintiff, however, says that it was held in Citizens' Savings Bank v. City of Newburyport, 169 Fed. 766, 95 C. C. A. 232, that the certificate of the treasurer alone was sufficient to bind the town. But in that case it is to be remembered that the court was of the opinion that the town was authorized, under section 6, chapter 27, R. L. Mass., to issue notes signed by the treasurer alone, and that, inasmuch as the ordinance or vote of the city council did not expressly provide that the note should be countersigned by the mayor, although it was in fact so countersigned, the treasurer alone had the right and was charged with the duty of ascertaining the necessary facts precedent to certification, and, having certified to those facts in a written statement accompanying the note, the authority under the statute and vote of the city was properly exercised and the city estopped. But, as we have held that the construction there placed upon section 6 is erroneous, the conclusion is inevitable that the recitals in the notes in question are not binding upon the town.

[4] It remains to be considered whether the town under the circumstances of this case is bound as an indorser and warrantor of the genuineness of the signatures preceding the indorsement. As to this question, the plaintiff's contention is (1) that under the Negotiable Instruments Law as found in chapter 73, R. L. Mass., the defendant municipality was bound as a warrantor; and (2) that, if the Negotiable Instruments Law does not apply to negotiable instruments of a municipal corporation, it is bound as a warrantor under the law merchant.

As to the Negotiable Instruments Act, the Supreme Court of Massachusetts has held that it confers no authority upon a town treasurer to impose upon his town the liability of an indorser, and that the word "corporation," as used in Revised Laws, chapter 73, section 59, of that act, does not include cities and towns. Franklin Savings Bank v. Framingham, 212 Mass. 92, 95, 98 N. E. 925. We see no reason to question the correctness of this holding.

[5] It was also held in that case that a town treasurer has no general authority to bind a town by his indorsement of a note; that "his authority to impose a financial obligation by way of incurring indebtedness is strictly limited by the statute"; and that he has "no power by virtue of his office as treasurer to make the town a responsible party on commercial paper."

[6] But the plaintiff contends that, inasmuch as the statutes of the state and the vote of the town did not prescribe the form of note, and it was customary for Massachusetts towns to make notes payable to the treasurer, and notes so made could not be put in circulation without the indorsement of the town or treasurer, from the necessity of the case Lombard had implied authority to make the indorsement and bind the town as a warrantor of the genuineness of prior signatures. But this question was disposed of in Citizens' Savings Bank v. City

of Newburyport, supra, where the note was of like form and similarly indorsed. It was there said:

"Although, under some circumstances, with such a signature it might be that Felker [the city treasurer] was personally liable on the notes, yet it is plain his name was used only to give the notes currency; and it is settled in the federal courts that his indorsement has no other effect. Falk v. Moebs, 127 U. S. 597, 8 Sup. Ct. 1319, 32 L. Ed. 266. Therefore the notes in suit were in substance the same as though they had been made payable to the city of Newburyport in terms, and indorsed by it in blank before they were negotiated. By the law merchant this makes them notes payable to bearer, which pass by delivery without any indorsement or any form of assignment."

As we understand this, it means that the instrument, until the indorsement was placed upon it, was not a note, and the indorsement simply perfected its execution; for to give it any other effect would be in contravention of the statutes of the state, and to confer upon the treasurer an authority which he did not possess. Furthermore, if it could be said that from the necessity of the case the treasurer has implied authority to indorse a note made in this form, still the necessity and consequent right to exercise such authority would not arise until a note so drawn was duly executed by the treasurer and the selectmen in compliance with the statutes of the state and the vote of the town, which is not the case here.

The decision in Warren-Scharf Asphalt Paving Co. v. Commercial National Bank, 97 Fed. 181, 38 C. C. A. 108, on which the plaintiff relies, is not applicable to the facts in this case. There England, the party who indorsed the check, had express authority to indorse and sign checks for the Warren-Scharf Company.

The judgment of the District Court is affirmed, with interest, and the defendant in error recovers its costs in this court.