CITY OF NEWTON *vs.* THOMAS BELGER & another.

Middlesex. Nov. 19, 1886. — Feb. 24, 1887. HOLMES & GARDNER, JJ., absent.

The Pub. Sts. *c.* 104, § 1, reënacting the St. of 1872, *c.* 243, provide that any city or town, which accepts the statute, " may, for the prevention of fire and the preser- vation of life, by ordinances or by-laws not repugnant to law, and applicable throughout the whole or any defined part of its territory, regulate the inspection, materials, construction, alteration, and use of buildings and other structures within its limits." A city accepted the statute, and, assuming to act under it, passed the following ordinance : " No person shall erect, alter, or rebuild, or essentially change any building or any part thereof for any purpose other than a dwelling-house, without first obtaining in writing a permit from the board of aldermen. The application for such permit shall specify the location and size of the building, the material of which it is to be constructed, and the use for which it is intended." *Held*, that the ordinance was broader than that author- ized by the statute, and was invalid.

BILL IN EQUITY, filed April 19, 1886, against Thomas Belger and Mary E. Belger, to restrain the defendants from erecting a building on land owned by the second-named defendant in the plaintiff city, to be used as a blacksmith shop, and to compel the removal and abatement of the same as a nuisance. Hearing before *Devens*, J., who ordered a decree to be entered for the plaintiff, in accordance with the prayer of the bill; and reported the case for the consideration of the full court. The facts mate- rial to the point decided appear in the opinion.

*W. S. Slocum*, for the plaintiff.

*J. A. Maxwell*, for the defendants.

MORTON, C. J. The St. of 1872, *c.* 243, reënacted in the Pub. Sts. *c.* 104, § 1, provides that any city or town, except Boston, which accepts the statute, " may, for the prevention of fire and the preservation of life, by ordinances or by-laws not repugnant to law, and applicable throughout the whole or any defined part of its territory, regulate the inspection, materials, construction, alteration, and use of buildings and other structures within its limits," with certain exceptions not material in this case.

It was held in *Salem* v. *Maynes*, 123 Mass. 372, that this statute is constitutional, being an exercise of the police power; and that an ordinance of the city of Salem passed under it,

prohibiting the erection, within a defined fire district, of any wooden building other than a dwelling-house, more than fifteen feet in height, and covering an area of more than one thousand square feet of land, was lawful and valid.

The city of Newton accepted the statute, and, acting under it, passed an ordinance, of which the first two sections are as follows:

"Section 1. No person shall erect, alter, or rebuild, or essentially change, any building or any part thereof, for any purpose other than a dwelling-house, without first obtaining in writing a permit from the board of aldermen. The application for such permit shall specify the location and size of the building, the material of which it is to be constructed, and the use for which it is intended.

"Section 2. No person shall use any building, or part thereof, for any purpose rendering said building, or buildings adjacent thereto, hazardous, unsafe, or liable to be destroyed by fire, or dangerous to persons or property, without first obtaining a permit as named in section one."

The statute authorizes a city to pass such ordinances, regulating the construction, materials, and use of buildings, as are reasonable and necessary "for the prevention of fire and the preservation of life." The ordinances of Newton are much broader in their scope, and reach much further in their purposes. The first section does not contain any regulations to guide the landowner in the construction or alteration of a building upon his land; it broadly prohibits any erection or alteration of a building other than a dwelling-house, in any part of the city, unless the landowner first obtains a written permit from the board of aldermen. It does not merely forbid the erection of any building which is hazardous, or which exposes other property or persons to danger. It does not require the board of aldermen to adjudicate and determine that it is necessary to prohibit any proposed building, for the purpose of securing the prevention of fire or the preservation of life. On the contrary, it gives them the power, by refusing a permit, to prevent the erection of any building except a dwelling-house, for any reason which may be satisfactory to them. Under the ordinance, they may refuse a permit, because, in their opinion, it is desirable that certain

parts of the city shall be used only for handsome dwelling-houses, and that all buildings for the purposes of trade shall be excluded, though in no sense dangerous.

Whatever may have been the intention of its framers, the ordinance is broader than the statute in its scope, and cannot be justified as a reasonable exercise of the authority conferred by the statute.

We are inclined to think that the second section is open to the same objections. It is too broad and loose in its provisions. Under it, if literally construed, a man could not heat his house, as this use would render it "liable to be destroyed by fire." If the object was to provide that buildings should not be used for any specially hazardous or dangerous purpose, the ordinance should say so. It should lay down some rules to guide the citizen in the use of his property, so that he may protect himself from exposure to a heavy penalty without any notice to him. Both sections are rather in the nature of general laws than of regulations as to the construction and use of buildings to guard against fire. But we need not consider the question of the validity of the second section, as this bill is to enjoin the defendants from erecting a building, and depends upon the validity of the first section.

For the reasons we have stated, we are of opinion that the first section is invalid. It exceeds the powers conferred upon the city by the Legislature, and imposes unauthorized restrictions upon the right of the citizen to the use of his property.

The case is distinguishable from *Salem* v. *Maynes, ubi supra.* The ordinance of the city of Salem, which was held to be valid, did not, as in this case, undertake baldly to prohibit the erection of buildings unless with a permit of the aldermen. It contained careful and specific regulations as to the construction and materials of buildings within the fire district, and was clearly designed for the sole purpose of preventing fires, and was thus within the statute.                    *Bill dismissed.*